# Exhibit A

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 12/30/2025 4:03 PM
By: Christopher Hirt, Deputy

Michael A. Kahn, Esq. SBN 123155
Jeffrey D. Garfinkel, Esq. SBN 272090
**THE LAW OFFICES OF MICHAEL A. KAHN**
10990 Wilshire Blvd., Suite 1040
Los Angeles, CA 90024
310-209-1600
310-481-6076 Fax
*Pleadings and discovery:* eservice@michaelkahnlaw.com

Attorneys for Plaintiff BRIGID KENNEDY, as administrator of the ESTATE OF KEVIN COLUMB LYNCH

**SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF MONTEREY**

| | |
|---|---|
| BRIGID KENNEDY, AS ADMINISTRATOR OF THE ESTATE OF KEVIN COLUMB LYNCH;<br><br>Plaintiff,<br><br>vs.<br><br>TESLA INC.; AND DOES 1-75; ADRAIG LYNCH, DEIRDRE WASHBURN; KILLEEN TAPIA; MACOURNEEN BACA; VENETIA CHENAULT; AUDREY PFEIFFER; AND DOES 76-100,<br><br>Defendants, | Case No.: 25CV006697<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) Negligent Design/Manufacture;**<br>**(2) Strict Products Liability;**<br>**(3) Negligent Failure to Recall or Retrofit;**<br>**(4) Negligence; and**<br>**(5) Survival Action.**<br>**(6) Misrepresentation (Concealment)**<br><br>**Punitive Damages Alleged**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff BRIGID KENNEDY, as administrator of the ESTATE OF KEVIN COLUMB LYNCH, complains against Defendants, and brings action as against Defendants, as set forth hereinafter as follows:

## OVERVIEW

1. This case arises from catastrophic design defects in the Tesla Model Y that turned a survivable crash into a fatal fire. On July 28, 2025 at approximately 1:40 a.m., 63-year-old Kevin Columb Lynch was driving his 2021 Tesla Model Y on River Road, north of Chualar River Road, in Salinas, California when his vehicle went off the road and into a tree.

2. During or immediately after the collision, the Tesla Model Y caught fire. On information and belief, the lithium-ion battery underneath the Model Y also caught fire, leaving the decedent Lynch unable to open the doors or exit the vehicle. California Highway Patrol was alerted to the crash and the subsequent fire, and when officers arrived on the scene several minutes later, Kevin Columb Lynch was still trapped alive inside the burning vehicle. While the doors of the vehicle remained mechanically openable, their ordinary operation depended on low-voltage electronic buttons located inside the cabin and on the exterior pillar. On information and belief those buttons failed after the crash, whether due to loss of power or other damage, rendering the door handles non-functional after the crash from both the inside and outside of the vehicle. This design left no reasonable escape route or means of egress for Kevin Lynch, who burned to death suffering greatly in the process.

3. The combination of these design choices, and others as well as potential manufacturing defects, created a highly foreseeable risk: that occupants who survived a crash would remain trapped inside a burning vehicle. Kevin Columb Lynch did not die from the crash; he died because Tesla's design left him with no practical means of escape.

4. Well before this tragedy, Tesla had been repeatedly placed on notice

that its reliance on electronic door systems created a serious risk of occupant entrapment after crashes. Owners, rescuers, and regulators had documented prior incidents where Tesla occupants survived the crash forces but were unable to escape when power failed and fire ensued. Despite these warnings, Tesla continued to market and sell vehicles that predictably trapped survivors in foreseeable emergencies, and actively concealed these dangers from the decedent and members of the public.

**PRELIMINARY ALLEGATIONS**

5. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1-75, are unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe and thereon allege that each DOE Defendant is legally responsible in some manner, whether in negligence, contract, warranty, strict liability, or otherwise, for the events and occurrences described herein, and thereby proximately caused injuries and damages to Plaintiffs as herein alleged.

6. The nominal defendants PADRAIG LYNCH, DEIRDRE WASHBURN, KILLEEN TAPIA, MACOURNEEN BACA, VENETIA CHENAULT, and AUDREY PFEIFFER and DOES 76-100 are so named herein to bring the heirs before the Court as required.

7. Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendants DOES 1-75, and each of them, were agents, employees, contractors, co-conspirators, or otherwise acting on behalf of the named Defendants and/or other DOES 1-75, and each of them, and that at all relevant times, DOES 1-

75, and each of them, were acting within the course and scope of their agency, conspiracy, employment or contractual relationship with the named Defendants or DOES 1-75.

**PARTIES, JURISDICTION, AND VENUE**

8. Plaintiff BRIGID KENNEDY is now, and at all times herein mentioned was, a citizen of and resident within the County of Barton, State of Kansas.

9. Plaintiffs BRIGID KENNEDY, and nominal defendants herein PADRAIG LYNCH, DEIRDRE WASHBURN, KILLEEN TAPIA, MACOURNEEN BACA, VENETIA CHENAULT, and AUDREY PFEIFFER and DOES 76-100 are the surviving heirs/siblings of KEVIN COLUMB LYNCH, now deceased, and constitute the proper wrongful death heirs pursuant to California Code of Civil Procedure section 377.60.

10. Plaintiff BRIGID KENNEDY is also the Administrator of the ESTATE OF KEVIN COLUMB LYNCH and brings this action on behalf of the ESTATE OF KEVIN COLUMB LYNCH pursuant to California Code of Civil Procedure sections 377.11 et. seq. Attached Exhibit A is the Order of appointment.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant TESLA, INC. is a Texas corporation with its engineering headquarters in Palo Alto, California, in the County of Santa Clara.

12. At all relevant times, Defendant TESLA, INC. and DOES 1-75, (hereinafter collectively referred to as "TESLA") were engaged in the business of designing, manufacturing, assembling, testing, marketing, distributing, and selling in the stream of commerce to California residents, Tesla vehicles including but not

limited to the Tesla Model Y. DOES 1-15 are an individual or individuals who dealt with decedent in the capacity of salesman in California where the Tesla vehicle was sold to plaintiff, or persons which maintained the vehicle, who dealt with the decedent, and concealed the defects in decedent's Tesla vehicle known to them which are the subject of this Complaint.

13. Prior to July 28, 2025, TESLA designed, marketed, manufactured, distributed, sold, and/or placed into the stream of commerce for ultimate use by the general public a certain 2021 model year Tesla Model Y bearing California license plate 8TAE674.

14. The collision and subsequent fire that is the subject of this action occurred in the County of Salinas, State of California.

15. The amount in controversy is in excess of the minimal jurisdictional limits of this Court, according to proof.

**Safety Standards for Occupant Escape After a Crash**

16. Motor vehicle manufacturers have long known that crashes can and will occur for different reasons — including driver error, vehicle malfunction, distraction, impairment, speeding, road hazards, or other conditions. They also know that post-crash fires are a foreseeable risk, especially in vehicles equipped with high-voltage battery systems. Crashworthiness means that when a collision occurs the vehicle provides reasonable protection against enhanced injury. Crashworthiness is not limited to protecting occupants during the initial impact; it also encompasses the ability of survivors to escape a burning vehicle, or be rescued, before fire overtakes the passenger compartment. Regardless of the cause of a crash, the manufacturer's obligation includes designing vehicles that permit timely

escape and rescue in the event of post-crash fire.

17. The need for safe occupant egress after a collision has long been recognized. As far back as 1972, the U.S. Department of Commerce published a study titled Escape Worthiness of Vehicles for Occupants in Crashes, which warned that a lack of standardized and intuitive door mechanisms hampered escape and recommended designing interiors with emergency egress in mind. This principle is, in part, codified in Federal Motor Vehicle Safety Standard (FMVSS) No. 206, which requires that each rear side door have an interior release accessible to occupants.

18. The National Fire Protection Association's NFPA 556, entitled Guide on Methods for Evaluating Fire Hazard to Occupants of Passenger Road Vehicles, further emphasizes that vehicles should be designed to delay fire spread and provide sufficient time for evacuation. NFPA 556 is a consensus document developed by an internationally recognized standards-setting body and it is relied upon by engineers, regulators, and fire safety professionals to define best practices in occupant protection. NFPA 556 identifies that the primary fire safety objectives for motor vehicles are to reduce the likelihood of fire occurrence, delay fire growth, and provide sufficient time for safe egress. The standard states "[d]esign improvements that provide adequate time for passengers to escape or be rescued should be incorporated." NFPA further advises that "[t]he choice of an effective and reliable means to achieve the fire performance objectives should be based on an evaluation that includes all conditions of the hazard and protection as well as the quantification of egress time."

19. Defendant Tesla, Inc. ignored these principles, instead creating a vehicle, the Model Y, in which escape depends on electronic door buttons which TESLA knew sometimes fail in the very circumstances — collision and fire — when

escape is most urgent.

**How Tesla Model Y Doors Work — and Fail**

Exterior Entrapment

20. The Tesla Model Y is equipped with exterior door handles, but those handles do not mechanically unlatch the doors; instead, they rely on the vehicle's low-voltage electrical system to actuate the door latches. If that low-voltage system fails in a crash or fire, the exterior handles and interior electronic release buttons become inoperable, leaving rescuers without a functional means to open the doors from outside the vehicle. In those circumstances, forced entry is substantially impeded by the Model Y's laminated safety glass and reinforced door structure, which require significant force and specialized tools to breach. Due to the tendency of the lithium batteries to catch on fire, on information and belief, because numerous instances of this have been reported by national news media, as is hereinafter cited, this is an unknown and serious threat to the purchaser and many have died as a result of this defect in Tesla vehicles. This case represents another such case.

**Interior Entrapment**

21. Inside the Model Y, normal door operation also relies on a low-voltage electronic button mounted on the door handle, which may fail in a crash due to power loss or crash damage. For occupants trapped in the vehicle, the only remaining option is a non-intuitive mechanical release. These design choices created a highly foreseeable risk that rear seat occupants who survived the crash could remain trapped when the vehicle caught fire, and the door buttons stop

functioning.

**Notice to TESLA of the Dangers of Its Door Systems**

22. For more than a decade before this crash, Defendant TESLA had repeated and direct notice that its reliance on electronic door systems created a serious risk of entrapment. Owners, bystanders, and first responders documented instances where Tesla occupants survived crash forces but could not escape when electrical power failed and fire ensued. Consumers lodged dozens of complaints with the National Highway Traffic Safety Administration ("NHTSA"), many warning that rear-seat passengers — especially children — could be trapped inside during a fire or crash. Firefighters and rescuers likewise reported occasions where they were unable to save occupants because the doors would not open once power was lost. TESLA also knew of these hazards from its own engineering data and investigations, which confirmed that occupants were at risk of entrapment in post-crash fires. Despite this notice, Defendant TESLA continued to design, market, and sell vehicles, including the Model Y, that predictably left crash survivors trapped in foreseeable emergencies.

23. TESLA's leadership was personally aware of these problems. During a May 2013 earnings call, CEO Elon Musk admitted that Tesla's door handles sometimes malfunctioned, acknowledging that "occasionally the sensor would malfunction... so you'd pull on the door handle, and it wouldn't open," which he conceded was "quite vexing for a customer." Musk assured investors the problem had been solved, claiming that "the door-handle incidents have gone to virtually zero." In reality, failures continued for years, leading to fatalities and repeated warnings from Defendant TESLA's own customers.

24. Examples of door issues that came to Defendant TESLA's attention

before Kevin Columb Lynch's death and continuing since then include:

a. Davie, Florida (Feb. 24, 2019): A Model S caught fire after a crash; a witness reported "several people were trying to find ways to get to the driver but the car doors and bags trapped the driver and kept us from getting to him before the car was taken over by fire."

b. Leesburg, Virginia (Dec. 9, 2023): An off-duty firefighter smashed a Model Y's driver's window during a fire and burned himself reaching for the manual release. He rescued the driver but could not free the passenger before she sustained severe burns and lung damage.

c. Toronto, Canada (Oct. 24, 2024): Four people were killed when a Model Y crashed and burst into flames. A rescuer who saved the sole survivor reported that "you couldn't open the doors... she was pretty desperate to get out... I don't know if that was the battery or what, but she couldn't get out."

d. Valencia, California (June 18, 2018, NHTSA complaint): An owner warned that "rear passengers and specially [sic] children... can become trapped in the event of a fire or major collision that disables the electrical power to the doors."

e. Carlsbad, California (Aug. 8, 2021, NHTSA complaint): After a 12-volt failure trapped his wife, an owner smashed a window to free her. He told TESLA the manual release was "unmarked and inconspicuous" and warned that "Tesla created an unsafe situation where people can be trapped."

f. Tacoma, Washington Jan 7, 2023. A Telsa Model 3 crashed into a utility pole and ignited. It has been reported, and Plaintiff herein alleges on information and belief that bystanders attempted rescue but could open the doors from outside because the handles would not operate after the power loss of the vehicle following the crash, and attempts to break windows were hindered by the

heat and speed of the firer growth. On information and belief, this is what prevented first responders on the scene of the instant case from rescuing KEVIN COULOMB LYNCH who was noted and reported as being still alive and trying to escape the burning vehicle at the scene of the subject accident. Police radio transcripts confirm the above reporting.

g. Wilmette, Illinois (Mar. 7, 2024, NHTSA complaint): An owner reported that when rear door openers fail, "the backup mechanical system is completely inadequate... the rear doors require a number of steps that are odd and not obvious or intuitive, leading to a very dangerous situation when a very fast exit is needed."

h. Verona Wisconsin (November 1, 2024) a lawsuit alleged five fatalities when a Tesla Model S crashed and ignited and all five occupants died. On information and belief, the electronic door system failed after the vehicle battery ignited and the occupants attempted to but could not access the manual release of the doors. The Reuter's news organization notes reports of screams at the scene and the inability to escape the burning vehicle.

i. Piedmont, California (November 27, 2024). As in this case, it has been reported and Plaintiff and nominal defendants herein allege that a Tesla Cyber truck crashed into a tree at high speed and caught fire. The electronic door buttons failed and there was significant difficulty accessing the occupants, including breaking the "armor glass" slowing rescue in the midst of a flaming vehicle. There were three deaths and one survivor as reported in the media. Once again, the power depended door controls failed and there were significant rescue impediments.

j. Schwerte (Villingst District, Germany). (September 7, 2025) A Tesla crashed into a tree, and caught fire; one child reportedly escaped, while a father and

two children could not and died. Officials with European safety and English-language reporting describe that victims were reportedly trapped and that attempts to open doors were unsuccessful. This case is cited in broader European/United Nations style regulatory discussions about electrically activated doors lacking necessary emergency open requirements.

25. These incidents and complaints made clear that Defendant TESLA had long been on notice of a potentially lethal design defect. Defendant TESLA knew that occupants of its vehicles had become trapped and died in post-crash fires, and that customers and rescuers were warning of the hazard that killed Kevin Columb Lynch: passengers unable to escape or be rescued following a collision, when electronic door systems failed. Despite this knowledge, Defendant TESLA did not correct the defect and continued to sell vehicles which on information and belief all contained the defect complained of in this action—including the Model Y—that predictably trapped their occupants in foreseeable emergencies.

**TESLA Knew of Safe Alternatives and Chose Not to Use Them**

26. The severity of the hazard is underscored by the fact that Tesla customers resorted to makeshift solutions — attaching lanyards, key rings, or labels to the hidden releases, and even purchasing aftermarket kits — simply to give themselves and their passengers a chance to escape in an emergency. That consumers have resorted to such measures is evidence not only of a dangerously defective design, but also of Defendant TESLA's willful disregard for safety.

27. Defendant TESLA's history of defective door handles is particularly egregious because Tesla and DOES 1-100 knew from the outset how to design a system that avoided the hazard of power-loss entrapment. The original Model S —

the first vehicle fully designed by TESLA — featured interior front door handles that combined an electronic and mechanical latch. When the car had power, pulling the handle opened the door electronically; when power was lost, pulling the same handle opened the door mechanically.

28. Defendant TESLA's own Chief Designer, Franz von Holzhausen, has since acknowledged what is common sense: in emergencies, door releases must be intuitive and rely on the occupant's muscle memory. In a 2025 interview, when asked about the NHTSA's investigation into Tesla door handles, he stated: "the idea of combining the electronic one and the manual one together into one button... makes a lot of sense. It really helps... the muscle memory of reaching for something every day is there, and so you intuitively just grab the same thing and you're free."

29. Defendant TESLA has further demonstrated its awareness of the dangers of unlabeled, unintuitive mechanical releases by manufacturing certain front emergency door latches to include a pictogram showing a car with an open door inside a triangle. Yet Defendant Defendant TESLA continues to market and sell vehicles, including the Model Y, without such markings.

30. Given the above, feasible designs have long been available to TESLA, and that their own engineers understand the dangers created by failing to combine electronic and mechanical functions in a single, intuitive release. Despite this knowledge, TESLA consciously chose not to adopt these safer alternatives.

**The Crash and Kevin Columb Lynch's Preventable Death**

31. In the early morning hours of July 28, 2025, Kevin Columb Lynch was driving his 2021 Tesla Model Y on River Road, north of Chualar River Road, in Salinas, California when his vehicle veered off the road, collided with a tree, and

came to rest. The crash was significant, but Kevin survived the impact with only minor injuries.

32. Within moments, the Model Y caught fire. In the vehicle's position after the crash, the doors were unobstructed and technically remained mechanically openable, but the electronic buttons that normally controlled the door ceased functioning. Because the exterior handles also would not function, a rescuer could not open the doors from outside. The door's interior mechanical release was obscure, unlabeled, and not realistically feasible to locate or operate in the smoke and chaos of a fire. As a result, Kevin remained trapped and unable to escape.

33. Kevin ultimately died from smoke inhalation, carbon monoxide toxicity, and thermal injuries, not from blunt force trauma. The Monterey County Coroner's Bureau determined his cause of death to be inhalation of a toxic amount of carbon monoxide, with contribution from thermal burns. In short, Kevin Columb Lynch survived the crash; he died because Tesla's design of the Model Y left him unable to escape the burning vehicle. See attached as Exhibit one the Official Death Certificate attached hereto and by this reference is made a part hereof of this Complaint. It was determined that decedent died while alive of smoke asphyxiation.

**FIRST CAUSE OF ACTION**

(Negligent Design/Manufacture – Against TESLA and DOES 1-75)

As a first cause of action, Plaintiffs BRIGID KENNEDY, as administrator of the ESTATE OF KEVIN COLUMB LYNCH, complains against Defendants TESLA INC. and DOES 1-75 (collectively "TESLA"), and each of them, and allege as follows:

34. Plaintiff, alleges, and incorporates, herein by reference, as though fully set forth herein, each and every allegation set forth above.

35. At all relevant times, TESLA and DOES 1-75 owed a duty to Plaintiffs, to Decedent Kevin Columb Lynch, and to the public at large to exercise reasonable care in the design, manufacture, testing, inspection, distribution, and sale of the 2021 Tesla Model Y, including a duty to ensure that the vehicle was reasonably safe and crashworthy in foreseeable collisions, and to provide adequate warnings and instructions regarding known and reasonably foreseeable dangers.

36. TESLA breached that duty by, among other things:

a. Designing, manufacturing, and placing into the stream of commerce a vehicle that was unreasonably prone to catastrophic post-collision fire;

b. Failing to incorporate reasonable and feasible safeguards to allow safe and timely occupant egress following a foreseeable crash;

c. Relying on electronic and power-dependent door release mechanisms without adequate mechanical redundancies, including designing the right rear door so that when the electronic button stopped functioning — whether due to loss of power or other crash damage — escape depended on a concealed release hidden beneath the map pocket liner, an obscure and impractical mechanism in an emergency, thereby preventing escape or rescue;

d. Failing to reasonably test or validate the crashworthiness and fire survivability of the vehicle prior to release;

e. Incorporated laminated safety glass and reinforced body panels that, while marketed as protective, made it extraordinarily difficult or impossible for occupants to break a window from inside or for rescuers to execute forced entry from outside in an emergency; and

f. Failing to warn purchasers, users, and rescuers of the unreasonable risk of entrapment and post-collision fire created by the vehicle's design.

37. As a direct and proximate result of TESLA's negligence, the Model Y failed to provide reasonable crashworthiness protection.

38. As a further direct and proximate result of TESLA's negligence, after the collision, but before his death, Kevin Columb Lynch experienced severe emotional distress, fright, and conscious pain and suffering, all directly caused by TESLA's negligent design and failure to provide a practical and safe means of escape.

39. As a further direct and proximate result of TESLA's negligence, Plaintiff BRIGID KENNEDY, and nominal defendants PADRAIG LYNCH, DEIRDRE WASHBURN, KILLEEN TAPIA, MACOURNEEN BACA, VENETIA CHENAULT, and AUDREY PFEIFFER, Kevin's surviving siblings, have sustained and will continue to sustain profound noneconomic damages, including the loss of their brother's love, comfort, companionship, care, assistance, protection, affection, society, and moral support. Plaintiff and nominal defendants have also incurred economic damages, including funeral and burial expenses, in an amount to be proven at trial.

40. The negligent acts and omissions of TESLA were a substantial factor in causing the injuries, suffering, and death of Kevin Columb Lynch and the resulting damages to Plaintiffs.

## SECOND CAUSE OF ACTION

(Strict Products Liability – Against TESLA AND DOES 1-75)

41. As a second cause of action, Plaintiff BRIGID KENNEDY, as administrator to the ESTATE OF KEVIN COLUMB LYNCH, complains against Defendants TESLA, INC. and DOES ONE 1-75, and each of them, and allege as follows:

42. Plaintiffs realleges and incorporates herein by reference each and every allegation above as though fully set forth herein.

43. At the time the subject 2021 Model Y left the possession of TESLA, it was in a defective condition and unreasonably dangerous when used in a reasonably foreseeable manner. The subject 2021 Model Y constituted a defective product as that term is used in California law, rendering TESLA strictly liable in tort.

44. The subject vehicle was expected to, and did, reach Plaintiffs and Decedent Kevin Columb Lynch without substantial change from when it left TESLA's control.

45. The subject vehicle was defectively designed and unreasonably dangerous under the consumer expectation test and/or the risk-benefit test in that it failed to provide adequate crashworthiness and occupant protection in a foreseeable collision. Specifically, the Model Y was designed and manufactured in a condition that:

a. Allowed the vehicle to ignite and sustain an uncontrolled post collision fire;

b. Failed to incorporate reasonable and feasible safeguards to prevent or mitigate occupant entrapment following a crash;

c. Relied on electronic door release mechanisms and structural designs that prevented timely escape or rescue of occupants once the vehicle was disabled and engulfed in fire, including the right rear door, which in practice could not be opened because its only backup release was concealed, unlabeled, and impractical to use in the smoke, heat, and chaos of a fire;

d. Lacked adequate redundancy, fail-safes, or manual overrides for emergency egress in foreseeable crash scenarios; and

e. Did not perform in a reasonably safe manner in a foreseeable frontal impact, as evidenced by the inability of occupants to exit or be rescued despite being conscious immediately following the crash.

46. The subject Model Y was further defective because it failed to contain adequate warnings and instructions regarding the risk of entrapment, the inability to open doors following a crash, and the risk of post-collision battery fire.

47. As a direct and proximate result of these defects, Kevin Columb Lynch survived the crash forces with relatively minor injuries but was unable to escape when the vehicle caught fire. He experienced severe emotional distress, fright, and conscious pain and suffering before ultimately dying from smoke inhalation and thermal injuries. The Monterey County Coroner's Bureau (this accident occurred very near to the Salinas/Monterey county border) determined his cause of death to be inhalation of a toxic amount of carbon monoxide, with contribution from thermal burns.

48. As a further direct and proximate result of these defects, Plaintiffs BRIGID KENNEDY, and nominal defendants PADRAIG LYNCH, DEIRDRE WASHBURN, KILLEEN TAPIA, MACOURNEEN BACA, VENETIA CHENAULT, and AUDREY PFEIFFER, Kevin's surviving siblings, have sustained and will continue to sustain profound noneconomic damages, including the loss of their brother's love, comfort, companionship, care, assistance, protection, affection, society, and moral support. Plaintiffs have also incurred economic damages, including funeral and burial expenses, in an amount to be proven at trial.

49. The defective and unreasonably dangerous condition of the subject Model Y was a substantial factor in causing the injuries, suffering, and death of Kevin Columb Lynch and the resulting damages to Plaintiffs.

WHEREFORE, Plaintiff and nominal defendants pray judgment against the TESLA Defendants, and each of them, as hereinafter set forth.

**THIRD CAUSE OF ACTION**

(Negligent Failure to Recall or Retrofit – Against TESLA and DOES 1-80)

As a third cause of action, Plaintiff BRIGID KENNEDY, as administrator to the ESTATE OF KEVIN COLUMB LYNCH complains against Defendants TESLA, INC. and DOES 1-80, and each of them, and allege as follows:

50. Plaintiff and nominal defendants reallege and incorporate herein by reference each and every allegation above as though fully set forth herein.

51. After placing the subject Model Y into the stream of commerce, TESLA had a continuing post-sale duty to exercise reasonable care to monitor the safety of their vehicles, identify defects creating unreasonable risks of harm, and take corrective action including issuing recalls, service campaigns, retrofits, or other remedies to protect consumers.

52. TESLA knew or reasonably should have known that the subject vehicle contained serious safety-related defects, including but not limited to:

a. A propensity for catastrophic post-collision fires due to the high-voltage lithium-ion battery system;

b. Entrapment hazards caused by reliance on electronic and power-dependent door release systems without adequate mechanical redundancies, which could fail in a crash due to power loss or other damage, exemplified by the Model Y's doors, which technically remained mechanically openable but depended on a hidden, unlabeled release that was not feasible to locate or operate in the smoke, heat, and chaos of a fire;

c. Use of laminated glass windows that prevented or severely hindered

emergency forced entry or exit during foreseeable crash and fire events;

d. Failure of the vehicle's design to provide feasible emergency egress in the event of crash and fire; and

e. Other defects that prevented occupants from escaping and rescuers from accessing the vehicle following foreseeable crash events.

53. TESLA further knew of these hazards through their own engineering data, crash testing, consumer complaints, government investigations, and prior fatal crashes. In fact, the subject Model Y was subject to subject to recalls and investigations concerning door and battery safety at the time of the accident.

54. Despite this knowledge, TESLA negligently failed to take reasonable steps to recall, retrofit, or otherwise correct the defective vehicles already sold and in use, and instead continued to allow them to remain on the roadway without correction.

55. As a direct and proximate result of TESLA's negligent failure to recall or retrofit, the subject Model Y failed to provide reasonable crashworthiness protection. Kevin Columb Lynch survived the crash forces with relatively minor injuries, but he was unable to escape when the vehicle caught fire. He experienced severe emotional distress, fright, and conscious pain and suffering, all directly caused by the defective and unrecalled condition of the Model Y, before ultimately dying from smoke inhalation and thermal injuries.

56. As a further direct and proximate result of TESLA's negligence, Plaintiff BRIGID KENNEDY, individually and as administrator of the estate of KEVIN COLUMB LYNCH, and nominal defendants PADRAIG LYNCH, DEIRDRE WASHBURN, KILLEEN TAPIA, MACOURNEEN BACA, VENETIA CHENAULT, and AUDREY PFEIFFER, Kevin's surviving siblings, have sustained and will

continue to sustain profound noneconomic damages, including the loss of their brother's love, comfort, companionship, care, assistance, protection, affection, society, and moral support. Plaintiffs have also incurred economic damages, including funeral and burial expenses, in an amount to be proven at trial.

57. The negligent failure of TESLA to recall or retrofit the subject Model Y was a substantial factor in causing the injuries, suffering, and death of Kevin Columb Lynch and the resulting damages to Plaintiff and nominal defendants.

**FOURTH CAUSE OF ACTION**

**(Negligence – Against TESLA)**

As a fourth cause of action, Plaintiffs BRIGID KENNEDY, administrator of the ESTATE OF KEVIN COLUMB LYNCH complains against Defendants TESLA, INC. and DOES 1-100, and each of them, and allege as follows:

58. Plaintiff and nominal defendants reallege and incorporate herein by reference each and every allegation above as though fully set forth herein.

59. At all relevant times, Defendants TESLA and DOES 1-100, and each of them, had a duty to manufacture, sell, and distribute only products that were free of defects and were reasonably fit and suitable for their intended and foreseeable uses and which contained adequate warnings and instructions for use. At all relevant times, Defendants, and each of them, knew or should have known in that the 2021 Tesla Model Y was a product of such a nature that if not reasonably and prudently designed, manufactured, tested, equipped, or sold, it was likely to, and would cause injury to members of the public, including Decedent Kevin Columb Lynch.

60. At all relevant times, Defendants, and each of them, were negligent and careless in their design, manufacture, testing, labelling, warning, instruction, leasing and sale of the 2021 Tesla Model Y used by Decedent Kevin Columb

Lynch at the time of his death.

61. As a direct and legal cause of the negligence and carelessness of the Defendants, and each of them, Plaintiff and nominal defendants have been caused to suffer and sustain the injuries and damages hereinabove and hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**(Survival Action – Against All Defendants)**

62. Plaintiff and nominal defendants reallege and incorporate herein by reference each and every allegation above as though fully set forth herein

63. By reason of the Defendants' conduct, Plaintiff ESTATE OF KEVIN COLUMB LYNCH and nominal defendants have sustained general (non-economic) damages and economic damages in a sum in excess of the minimum jurisdictional limits of this court.

64. As a fifth cause of action, Plaintiff BRIGID KENNEDY as Successor-in-Interest and as administrator to the ESTATE OF KEVIN COLUMB LYNCH, and nominal defendants, who are anticipated to become plaintiffs in this action when time allows, complain against Defendants TESLA, INC. and DOEs 1-75, and each of them, and allege as follows:

65. As is fully set forth in the paragraphs above, decedent KEVIN COLOMB LYNCH suffered a non-fatal crash. He was trapped in a burning car that should not have caught fire when hitting a tree. First responders tried and failed to rescue him in time as he frantically tried to exit the vehicle when neither he nor the fire department or the Sherriff's office could free him. No one should die under such circumstances. TESLA's conduct also meets the definition of "malice" under California Civil Code § 3294. TESLA acted with conscious disregard for the safety of

its customers by deliberately refusing to implement safer alternative designs — including intuitive combined electronic/mechanical releases and labeled emergency latches — that it had already developed and deployed in other Tesla vehicles, choosing instead to market and sell the Model Y with known entrapment hazards. Accordingly, punitive damages are warranted to punish TESLA and deter similar conscious disregard for consumer safety in the future in an amount according to proof at the time of trial. Kevin Columb Lynch is entitled the damages he would have had had he survived. These include but are not limited to the following:

1. Decedent Kevin Columb Lynch's conscious pain, suffering, fright, medical bills, loss of income, property damage to his Tesla vehicle, and emotional distress experienced after the crash and before his death, caused by his inability to escape the right rear seat due to the Model Y's defective door design;

2. Decedent's funeral and burial expenses; and

3. Punitive damages as against DOES 1-15 for the reasons that a known manufacturing defect which caused decedents untimely death was fraudulently concealed from him when purchasing, servicing, and using the defective product which all occurred in the State of California

4. Other damages permitted by law.

**SIXTH CAUSE OF ACTION**

(Misrepresentation (Concealment) – Against All Defendants)

66. Plaintiff realleges and incorporate herein by reference each and every allegation above as though fully set forth herein.

Plaintiff claims that there was harm because Defendant TESLA and DOES 1-15 concealed certain information. Plaintiff alleges that TESLA and DOES 1-15 herein allege that these Defendants who dealt with Plaintiff by demonstrating,

selling, servicing, and maintaining decedents TESLA automobile intentionally failed to disclose certain facts regarding the dangers to decedent of the product defect described above in detail when such defect was clearly known to such Defendants and that decedent could not have discovered until moments before his untimely death. Plaintiff to this action alleges that decedent did not know of the concealed fact, and that defendants to this cause of action intended to deceive decedent by concealing the facts. Had the omitted information been disclosed, decedent reasonably would have behaved differently and would have likely not purchased his Tesla vehicle. As is more fully set forth above, decedent was harmed and the concealment of Defendants to this cause of action was a substantial factor in causing Decedents harm.

67. TESLA's conduct also meets the definition of "malice" under California Civil Code § 3294. TESLA acted with conscious disregard for the safety of its customers by deliberately refusing to implement safer alternative designs — including intuitive combined electronic/mechanical releases and labeled emergency latches — that it had already developed and deployed in other Tesla vehicles, choosing instead to market and sell the Model Y with known entrapment hazards. Accordingly, punitive damages are warranted to punish TESLA and deter similar conscious disregard for consumer safety in the future in an amount according to proof at the time of trial.

## PRAYER FOR RELIEF

Plaintiffs BRIGID KENNEDY, as the administrator for the ESTATE OF KEVIN COLUMB LYNCH, prays for judgment against Defendants TESLA, INC., and DOES 1-100, and each of them, as follows:

a. For survival damages recoverable pursuant to California Code of Civil Procedure sections 377.20-377.34, including but not limited to:

i. Decedent Kevin Columb Lynch's conscious pain, suffering, fright, medical bills, loss of income, and emotional distress experienced after the crash and before his death, caused by his inability to escape the right rear seat due to the Model Y's defective door design;

ii. Decedent's funeral and burial expenses; and

iii. Other damages permitted by law, including punitive damages for the reasons that a known manufacturing defect which caused decedents untimely death was fraudulently concealed from him when purchasing, servicing, and using the defective product.

b. For wrongful death damages recoverable under California Code of Civil Procedure § 377.60, including but not limited to:

i. The loss of Kevin Columb Lynch's love, comfort, companionship, care, assistance, protection, affection, society, and moral support; and

ii. All other pecuniary and nonpecuniary damages permitted by law.

c. For punitive and exemplary damages pursuant to the Fifth and Sixth Cause of Action against TESLA and DOES 1-15 only, in an amount sufficient to punish and deter Defendant TESLA Inc. and DOES 1-15.

d. For prejudgment interest to the extent allowed by law.

e. For costs of suit incurred herein.

f. For such other and further relief as the Court may deem just and proper.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL.

Dated: December 30, 2025

THE LAW OFFICES OF MICHAEL A. KAHN

By: ______________________

**Michael A. Kahn, Esq.**
Attorney for Plaintiff,

Michael A. Kahn, Esq. SBN 123155
Jeffrey D. Garfinkel, Esq. SBN 272090
**THE LAW OFFICES OF MICHAEL A. KAHN**
10990 Wilshire Blvd., Suite 1040
Los Angeles, CA 90024
310-209-1600
310-481-6076 Fax
*Pleadings and discovery:* eservice@michaelkahnlaw.com

Attorneys for Plaintiff BRIGID KENNEDY, individually and as Successor-in-Interest to the ESTATE OF KEVIN COLUMB LYNCH

**SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF MONTEREY**

| | |
|---|---|
| BRIGID KENNEDY, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE ESTATE OF KEVIN COLUMB LYNCH;<br><br>Plaintiff,<br><br>vs.<br><br>TESLA INC.; ADRAIG LYNCH, DEIRDRE WASHBURN, KILLEEN TAPIA, MACOURNEEN BACA, VENETIA CHENAULT, AND AUDREY PFEIFFER, AND DOES 1-100,<br><br>Defendants, | Case No.:<br><br>**DECLARATION OF BRIDGID KENNEDY PURSUANT TO CAL. CODE OF CIVIL PROCEDURE § 377.32, AND ORDER APPOINTING HER AS ADMINISTRATION OF THE ESTATE OF KEVIN COLUMB LYNCH, DECEDENT** |

Plaintiffs BRIGID KENNEDY, individually and as Successor-in-Interest to the ESTATE OF KEVIN COLUMB LYNCH, and nominal defendants PADRAIG LYNCH, DEIRDRE WASHBURN, KILLEEN TAPIA, MACOURNEEN BACA, VENETIA CHENAULT, and AUDREY PFEIFFER hereby submit to the Court the following documents:

1. Declaration re: Personal Representative/Successor in interest to the Estate of Kevin Columb Lynch.

2. Order dated 10/8/25 appointing Brigid Kerry Kennedy as the administrator of the estate of Kevin Coumb Lynch.

Dated: December 30, 2025

THE LAW OFFICES OF MICHAEL A. KAHN

By: ______________________

**Michael A. Kahn, Esq.**
Attorney for Plaintiff,

# DECLARATION RE PERSONAL REPRESENTATIVE/SUCCESSOR IN INTEREST TO THE ESTATE OF KEVIN COLUMB LYNCH

I, Brigid Kennedy, affirm and declare under penalty of perjury as follows:

1. This declaration is made pursuant to the provisions of California Code of Civil Procedure § 377.32.

2. This declaration is made for the purpose of establishing a successor-in-interest and personal representative for the estate of Kevin Columb Lynch, on behalf of all heirs who have a right to bring a claim pursuant to the provisions of Code Civ. Proc. § 377.32.

3. The decedent's name is Kevin Columb Lynch.

4. Kevin Columb Lynch died in Salinas County, California on July 28, 2025.

5. I am the decedent's successor-in-interest, as his surviving sister and the administrator of his estate.

6. I am the successor-in-interest and personal representative and have the authority to act on behalf of the other heirs who are defined in Code Civ. Proc. § 377.32.

7. No other person has a superior right to commence an action or proceeding to act on behalf of the estate or heirs.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of December, 2025, at Ellinwood, Kansas.

Brigid Kennedy (signature)

Brigid Kennedy

Received: 10/8/2025 12:20 PM

DE-140

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:
Peter Vittas (SBN 273726)
VITTAS LAW
12879 Runway Rd Suite 1, Playa Vista, CA 90094

TELEPHONE AND FAX NOS.: 424.276.6091

ATTORNEY FOR *(Name)*: Administrator BRIGID KERRY KENNEDY

FOR COURT USE ONLY

Electronically FILED
Superior Court of California
County of Los Angeles
10/9/2025 9:27 AM
David W. Slayton
Executive Officer/Clerk of Court,
By J. Orozco, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N Hill St
MAILING ADDRESS: same
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk

ESTATE OF *(Name)*: KEVIN COLUMB LYNCH

DECEDENT

**ORDER FOR PROBATE**

**ORDER APPOINTING**
[ ] **Executor**
[ ] **Administrator with Will Annexed**
[X] **Administrator** [ ] **Special Administrator**

[X] **Order Authorizing Independent Administration of Estate**
[X] **with full authority** [ ] **with limited authority**

CASE NUMBER: 25STPB09637

**WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.**

1. Date of hearing: 10-6-2025 Time: 8:30 AM Dept./Room: 67 Judge: Daniel Juarez

**THE COURT FINDS**

2. a. All notices required by law have been given.
   b. Decedent died on *(date)*: 7-28-2025
      (1) [X] a resident of the California county named above.
      (2) [ ] a nonresident of California and left an estate in the county named above.
   c. Decedent died
      (1) [X] intestate
      (2) [ ] testate
      and decedent's will dated: and each codicil dated:
      was admitted to probate by Minute Order on *(date)*:

The petition for final distribution or status report shall be filed not later than 01/25/2027 and set for hearing. An Order to Show Cause re status of Distribution is set for hearing on 03/22/2027.
JO

**THE COURT ORDERS**

3. *(Name)*: Brigid Kerry Kennedy
   is appointed **personal representative:**
   a. [ ] executor of the decedent's will
   b. [ ] administrator with will annexed
   c. [X] administrator
   d. [ ] special administrator
      (1) [ ] with general powers
      (2) [ ] with special powers as specified in Attachment 3d(2)
      (3) [ ] without notice of hearing
      (4) [ ] letters will expire on *(date)*:

   and letters shall issue on qualification.

4. a. [X] **Full authority** is granted to administer the estate under the Independent Administration of Estates Act.
   b. [ ] **Limited authority** is granted to administer the estate under the Independent Administration of Estates Act (there is no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

5. a. [ ] Bond is not required.
   b. [x] Bond is fixed at: $ 220,000.00 to be furnished by an authorized surety company or as otherwise provided by law.
   c. [ ] Deposits of: $ are ordered to be placed in a blocked account at *(specify institution and location)*:
   and receipts shall be filed. No withdrawals shall be made without a court order. [ ] Additional orders in Attachment 5c.
   d. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

6. [X] *(Name)*: James R. Tucker is appointed probate referee.

Date: 10/08/2025

Daniel Juárez
JUDGE

JUDGE OF THE SUPERIOR COURT

7. Number of pages attached: 0

[ ] SIGNATURE FOLLOWS LAST ATTACHMENT JO



For your protection and privacy, please press the Clear This Form button after you have printed the form.

[redacted] [redacted]

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# AFFIDAVIT COUNTY OF MONTEREY

SALINAS, CALIFORNIA

3052025187750

CERTIFICATE OF DEATH

3202527001585

KEVIN
COLUMB
LYNCH

11/29/1961
63
M

IRELAND
[redacted]
[X] DIVORCED
07/26/2025
0156

BACHELOR
[X] SPAIN
CAUCASIAN, SPANISH

CEO
BUSINESS IT NETWORK SUPPORT
35

862 GITANO DRIVE

OXNARD
VENTURA
93030
11
CA

BRIGID KENNEDY, SISTER
210 WEST 6TH STREET, ELLINWOOD, KS 67526

THOMAS
HUGH
LYNCH
NM

FLORENCE
MAGDALENE
DURAN
NM

08/06/2025
LAKIN COMANCHE CEMETERY
501 EAST D STREET, ELLINWOOD, KS 67526

CREMATE/TRANSIT/BURIAL
NOT EMBALMED

TULIP CREMATION
FD2322
EDWARD L MORENO, MD
08/05/2025

OFF ROADWAY INSIDE A VEHICLE

MONTEREY
RIVER ROAD AND CHUALAR RIVER ROAD
SALINAS

PENDING INVESTIGATION

AMENDED

1 OF 2

2025-00700

NONE

NO

BRIAN POSTADAN
08/05/2025
BRIAN POSTADAN, CEP CORONER

CERTIFIED COPY OF VITAL RECORDS

0 0 0 8 5 0 8 1 7

STATE OF CALIFORNIA
COUNTY OF MONTEREY } SS

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Monterey County Clerk-Recorder

DATE ISSUED 10/30/2025

ATTEST

XOCHITL MARINA CAMACHO
County Clerk-Recorder

This copy not valid unless prepared on engraved border displaying date, seal and signature of Deputy County Clerk-Recorder

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

COUNTY OF MONTEREY CALIFORNIA 1850

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# COUNTY OF MONTEREY

SALINAS, CALIFORNIA

## PHYSICIAN/CORONER'S AMENDMENT

NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

3052025167750 — STATE FILE NUMBER

3202527001585-A — LOCAL REGISTRATION NUMBER

1.1

☐ BIRTH ☒ DEATH ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

**PART I INFORMATION TO LOCATE RECORD**

INFORMATION AS IT APPEARS ON ORIGINAL RECORD

| 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST | 2. SEX |
|---|---|---|---|
| KEVIN | COLUMB | LYNCH | M |

| 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT |
|---|---|---|
| 07/28/2025 | SALINAS | MONTEREY |

**PART II STATEMENT OF CORRECTIONS**

LIST ONE ITEM PER LINE

| 6. CERTIFICATE ITEM NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|
| 107A | PENDING INVESTIGATION | CARBON MONOXIDE TOXICITY |
| 107AT | | MINS |
| 107B | | SMOKE INHALATION |
| 107BT | | MINS |
| 112 | NONE | THERMAL BURNS |
| 119 | PENDING INVESTIGATION | ACCIDENT |
| 120 | | N |
| 121 | | 07/28/2025 |
| 122 | | 0138 EST |
| 123 | | OTHER: OFF ROADWAY INSIDE A VEHICLE |
| 124 | | THE DECEDENT INHALED A TOXIC AMOUNT OF CARBON MONOXIDE FROM SMOKE INHALATION AFTER A VEHICLE ACCIDENT. |
| 125 | | INSIDE A VEHICLE THAT CRASHED AGAINST A TREE RIVER ROAD AND CHUALAR RIVER ROAD, SALINAS, CA 93908 |

2 OF 2

DECLARATION OF CERTIFYING PHYSICIAN OR CORONER

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

| 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER | 10. DATE SIGNED—MM/DD/CCYY | 11. TYPED OR PRINTED NAME AND TITLE/DEGREE OF CERTIFIER |
|---|---|---|
| ▶ BRIAN POSTADAN | 10/16/2025 | BRIAN POSTADAN, DEPUTY CORONER |

| 12. ADDRESS—STREET AND NUMBER | 13. CITY | 14. STATE | 15. ZIP CODE |
|---|---|---|---|
| 1414 NATIVIDAD ROAD | SALINAS | CA | 93906-3012 |

STATE/LOCAL REGISTRAR USE ONLY

| 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY |
|---|---|
| ▶ CDPH-VR | 10/16/2025 |

CERTIFIED COPY OF VITAL RECORDS

0 0 0 8 5 0 8 0 6

STATE OF CALIFORNIA
COUNTY OF MONTEREY } ss

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Monterey County Clerk-Recorder

DATE ISSUED 10/30/2025 ATTEST

XOCHITL MARINA CAMACHO
County Clerk-Recorder

This copy not valid unless prepared on engraved border displaying date, seal and signature of Deputy County Clerk-Recorder

COUNTY OF MONTEREY CALIFORNIA • 1850 •

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael A. Kahn, Esq. SBN 123155<br>Law Offices of Michael Kahn, 10990 Wilshire Blvd., Suite 1040, Los Angeles, CA 90024<br>TELEPHONE NO.: 310-209-1600 FAX NO.: 310-481-6076<br>EMAIL ADDRESS: eservice@michaelkahnlaw.com<br>ATTORNEY FOR *(Name):* Plaintiff | ELECTRONICALLY FILED BY<br>Superior Court of California,<br>County of Monterey<br>On 12/30/2025 4:03 PM<br>By: Christopher Hirt, Deputy |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SALINAS<br>STREET ADDRESS: 1200 Aguajito Road<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Monterey, CA 93940<br>BRANCH NAME: | |
| CASE NAME:<br>Brigid Kennedy et. al. v. Tesla, Inc. et. al. | |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 25CV006697 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [x] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 6
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 29 2025

MICHAEL A. KAHN, ESQ.
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SUPERIOR COURT OF MONTEREY COUNTY<br>**Monterey Branch**, 1200 Aguajito Road, Monterey, CA 93940 | |
|---|---|
| **Brigid Kennedy, as Administrator of the Estate of Kevin Columb Lynch<br>vs<br>Adraig Lynch, et al.** | **CASE NUMBER<br>25CV006697**<br><br>**Case Management Conference** |

**<u>NOTICE OF ASSIGNMENT AND CASE MANAGEMENT CONFERENCE</u>**

**Your case is assigned for all purposes to the Honorable Ian A. Rivamonte.**

Your civil case, excluding unlawful detainer and collections are a rotational assignment among three judicial officers:
Judge Thomas W. Wills; Judge Carrie M. Panetta, Judge Ian A. Rivamonte

Your provisionally complex case or "is complex" designation at case initiation are assigned ODD/EVEN by ending number among two judicial officers: Judge Thomas W. Wills and Judge Carrie M. Panetta

This notice, which includes the Alternative Dispute Resolution (ADR) information packet (CI-127), <u>must</u> be served together with the Summons and Complaint or Petition pursuant to California Rule of Court 3.221. *Parties are required to follow the complex case instructions, case management rules as outlined in California Rule of Court 3.722 and Chapter 6 of the Local Rules of Court, all can be found on the court website at* <u>www.monterey.courts.ca.gov</u>. A case management statement from each party or joint statement shall be filed prior to the conference as outlined in California Rule of Court 3.725.

**Date: <u>May 05, 2026</u> Time:9:00 AM_ Department 13A ***

**Location: <u>Monterey Courthouse, 1200 AGUAJITO ROAD, MONTEREY, CA 93940</u>**

*If appearing remotely be sure and access the correct link:
Judge Thomas W. Wills – Dept. 15
Judge Carrie M. Panetta – Dept. 14
Judge Ian A. Rivamonte – 13a
Information regarding remote appearance can be found at: <u>https://www.monterey.courts.ca.gov/remote</u>

## COURT REPORTER INFORMATION

**Effective January 1, 2022**, Monterey County Superior Court will only be providing court reporter services in the following, statutorily-mandated case types:

1. Death penalty proceedings under Penal Code §190.9;
2. Juvenile proceedings not before a referee or commissioner under Welfare & Institutions Code §347 and §677;
3. Felony cases under Code of Civil Procedure §269; and
4. "Withdrawal of consent to adopt" proceedings under Family Code §9005.

For all other, non-statutorily-mandated cases, litigants who need court reporter services, and who are not entitled to a court-provided reporter due to indigency, will need to arrange for such services.

Pursuant to statutes of the State of California, it is the responsibility of the court to establish procedures for the timely and effective disposition of civil cases.

The court is charged with the responsibility of ensuring all parties a fair and timely resolution of their disputes, and the court is in the best position to establish neutral rules and policies without adversely affecting all parties' right to a fair trial. Effective management of the judicial system will build continuing respect by the community of government, minimize the costs to the parties and the public, and maximize the probability that cases will be timely resolved.

The goals of the Monterey County civil case and trial management system are:

1. To provide an effective and fair procedure for the timely disposition of civil cases;
2. To provide a mechanism to gather needed case information in order to make appropriate judicial management decisions; and
3. To establish reasonable rules and policies to require that cases reporting "ready" for trial may be tried without unnecessary delays or interruptions.

*Court proceedings are in English. If you or a witness in your case needs an interpreter, please complete Judicial Council form INT—300.* ***You must file INT-300 at the first floor clerks counter (or by e-file) 15* business days prior to your hearing.***
*Los procedimientos judiciales son en inglés. Si usted o un testigo en su caso necesita un intérprete, complete el formulario INT-300 del Consejo Judicial.* ***Debe presentar el INT-300 con los empleados legales de la oficina del primer piso (o mediante archivo electrónico) 15* días hábiles antes de su audiencia.***

---

**Alternative Dispute Resolution (CI-127)** - (INFORMATION PACKET)
'OPTIONS FOR RESOLVING YOUR DISPUTE

**There Are Alternatives to Going to Trial**
Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach an agreement.

**Advantages of ADR**
Here are some potential advantages of using ADR:

- **Save Time:** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.
- **Save Money:** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and expert's fees.
- **Increase Control over the Process and the Outcome:** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

- **Preserve Relationships:** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.
- **Increase Satisfaction:** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
- **Improve Attorney-Client Relationships:** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

**What Are the ADR Options?**

The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

**Mediation**

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties. The Monterey County Superior Court offers a Court-Directed Mediation Program.

**Cases for Which Mediation May Be Appropriate:** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate:** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration**

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision in binding arbitration. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision. The Monterey County Superior Court offers a nonbinding judicial arbitration program.

**Cases for Which Arbitration May Be Appropriate:** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate:** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation**

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is nonbinding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate:** Neutral evaluation may be most appropriate in cases in which there are technical issues that require expertise to resolve or the only significant issue in the case is the amount of damages.
**Cases for Which Neutral Evaluation May Not Be Appropriate:** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conference**

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set